Keep that in mind. I appreciate it. Yes, Your Honor. Thank you very much, and good morning. Good morning, Your Honors. Marissa Jersey, Federal Defenders, on behalf of Francisco Ortega-Ortega. Your Honors, this Court should reverse Mr. Ortega's conviction. He was denied his Fifth and Sixth Amendment right to present a defense. At this trial, I sought to elicit from the AFILE custodian that Mr. Ortega's father is, in fact, a United States citizen. There were a number of documents in the AFILE that reflected this. There was a deportation tape where his father had stated this under oath, and the AFILE custodian testified to this at trial. And essentially, we were precluded from delving into this any further, from arguing this in closing argument, absolutely precluded from raising this defense whatsoever. You can assume we've read all the briefs, and I read the transcripts. And you had extensive hearings on this before Judge Benitez. And ultimately, the reason he ruled that it was not relevant or probative, even though some of it did actually come in, was that so what? So what if his father was a U.S. citizen? You didn't have anything else to show that your client had, by virtue of that fact, become a derivative citizen. I think that's absolutely incorrect. I think the government misconstrues what evidence was available. There was a birth certificate. The judge. Well, the judge misconstrues it as well. But in their reply brief, the government tends to limit what actual evidence did exist and what was presented to the court. Well, did he meet the requirements of the statute for derivative citizenship, or did you have evidence to show that? I think we had evidence to show everything. The only thing that may potentially have been questionable, but it was evidence, was whether, in fact, the residency requirements truly and completely had been met. I do not believe that was a question for the judge, though. That was a question for the jury to decide. Once that evidence had been placed before them, challenging the government and whether they'd met their burden of proof on the element of alienage, they could then take that, the instructions that we had proposed that the judge declined to give regarding how derivative citizenship is met, and then make a determination had the government met their burden. That was a factual question for the jury to decide, not for the judge to decide. It's not a pretrial issue, and this Court clearly held that in Smith v. Baltier. I think the government raises a number of arguments in their brief, number one, saying this evidence wasn't relevant. Smith forecloses that. It is absolutely relevant. In Meza-Soria, in Ortiz-Lopez, and in Smith again, this Court has held that alienage is an element of the offense. A defendant is absolutely entitled to present evidence to contest that. And essentially what did happen here was the jury sent out a note, and that note stated, does it matter if his father is, in fact, a United States citizen? The judge replied to this note. The answer was no. Now, clearly the jury had noticed what little evidence had been placed in the record, what I was foreclosed from even arguing in closing argument, and wanted to know if that had some type of effect. I had submitted a 28-J to this Court, I believe on April 27th, citing Powell, and stating essentially what happened was the judge directed a verdict. He removed that element from the jury's consideration by answering that question no. The government also, in their brief, argues that this is not a factual question. Again, Smith answers that. It clearly is a factual question for the jury. Enough evidence had been presented that Mr. Ortega was entitled to have an instruction to that effect and have a jury make a decision. Lastly, the government argues that this is harmless error. Well, I think the jury's note, again inquiring whether that evidence mattered, it's not harmless error. This Court stated in Smith and relied on United States v. Miguel, this is structural error. Mr. Ortega was denied the opportunity to present a defense. He was denied the opportunity to cross-examine the AFILE custodian into any investigation that had been done regarding Mr. Ortega's father. And I submitted another 28-J to this Court relying on United States v. Bahamunde, which cited to United States v. Seeger for the proposition that the failure to investigate alone is enough to constitute reasonable doubt. I was foreclosed from inquiring into that as well with the AFILE custodian. I think Smith clearly controls in this case. Mr. Ortega was denied that right. Judge Benitez, in his rulings and when the hearings were held, continued to insist that this was not relevant evidence and that it would simply mislead the jury. Roberts. In fairness to him, he didn't have Smith at the time. Smith came out after your trial. That's correct. But he did have United States v. Ortiz-Lopez and Mesa-Soria, which both state the same proposition that a person is absolutely entitled to contest the element of alienage. Let me ask you this. If you are right about Smith and this case goes back, what sort of jury instruction do you get? Well, I had proposed, and that would be at E.R., I believe, 5 and 6 were my proposed jury instructions, and there were two. It was 1409, the requirements for citizenship when a child is born out of wedlock, as well as the accompanying California statute, which is what is required for legitimization of the child. I mean, I don't know. What would the jury be told to find with respect to whether he's a citizen? Well, the jury's not actually finding if he is, in fact, a citizen. They're simply given those instructions as the law. Well, the government has to prove as an element of the offense that he's alienage. Right. What I'm essentially saying is that we're not asking the jury to confer a certificate of citizenship. We are simply presenting the law to them, and if they believe that the law has been met, those requirements for derivative citizenship, then the government has not, in fact, proven beyond a reasonable doubt that Mr. Ortega is an alien. Isn't that a legal question? And what was your evidence? I do want to get to the modified categorical approach, though, on your documents. But, I mean, what was your additional evidence of meeting 1401? Well, essentially, at ER 29 through 57, I have all of the evidence listed there. The birth certificate of Mr. Ortega's father, which states he is a United States citizen. Is that the father? So that shows the father's citizenship. But we don't know whether or not he's actually the father. Well, I think the birth certificate of Mr. Ortega and the birth certificate of Mr. Ortega's father indicate that the parents are the same. We also have an application that Mr. Ortega's father submitted contained within Mr. Ortega's A file for a permanent residency, where he swore under oath that he was the father of that child. He also appeared at a deportation proceeding, which the A file custodian listened to, where he swore under oath that he was his father and that he was a United States citizen. I think there's more than sufficient evidence that he is, in fact, his father. And the government never contested that he was not his father. Okay. But that alone doesn't establish Ortega's citizenship. I'm sorry. Well, the other evidence would be going back to the application for a permanent residency. There's certain requirements there showing that to meet the requirements under 1409, Mr. Ortega's father would have him reside in his home, swore that he was his child, and vowed to financially support him. So that meets the legitimization component of that. There was also a declaration from Mr. Ortega's father, most likely it would have been through testimony of his father at trial, saying that he was born here, that he resided here for a certain period of time as a toddler. He returned to Mexico. And then when he was roughly 13 again, he returned to the United States. All right. Can I just ask you, on the Taylor? Well, maybe I should say it for the government. Judge Benitez rejected that declaration because he said it was too vague in general and wasn't enough basically to form an offer of proof, you know, for the time periods that are required under the statute. Again, though, I think what Judge Benitez essentially did was he was taking that from the jury. That is a factual question. In Smith-Baltier, it wasn't entirely clear that the mother had met all of the residency requirements. But she had offered some proof, and the government had offered contradictory proof. And that was a question for the jury to cite. That's exactly the same situation here. No, it's not factually because, as I recall, Smith-Baltier, which I think I was on the panel, the mother's testimony there was that she gave birth to him in the United States. Well, the mother was never able to actually testify at trial. She was completely foreclosed on that. Right. And so the question is, how does the mother's testimony suffice to demonstrate citizenship? Well, that was in the case of a mother. The requirements are different for a child born to a father out of wedlock. So legally the requirements are different. Right. Good point. But I'm still saying that we meet all of the requirements under the legitimization in 1409g. We had presented sufficient evidence to the Court in our offer of proof, and then completely foreclosed from presenting that to the jury. I'll jump ahead to the ‑‑ Yeah, I'm troubled by the documents. If they prove the ‑‑ looking at the documents that were submitted, whether or not it establishes that what he was convicted of was a drug trafficking offense. Well, it's our position essentially the PSR relied on a conviction for 11352. We objected to that conviction saying that it was neither ‑‑ it did not warrant a plus 16 either categorically or on its face. The government then submitted an information, which was stamped work copy, so it's not entirely clear that that was the actual information filed, and then an abstract of judgment. The judge made no factual findings and simply said that those documents warranted a plus 16. Now, under Rivera-Sanchez, it's clear that this is not on its face a plus 16 enhancement, that we do need to go through a modified categorical approach. Now, the government took the position that the abstract of judgment stated seller furnished on it, and therefore, that was enough to establish a plus 16 enhancement. This Court in United States v. Navidad Marcos stated that great caution should be used when looking at an abstract of judgment. First of all, the title placed on there is simply something that may be done to restate the statute of conviction. It does not, in fact, indicate what that person actually pled guilty to. So there was absolutely no information in the record as to what Mr. Ortega actually pled guilty to. And in addition, because the judge made no factual findings, we would ask that the Court remand as well. There was a plea agreement in this ‑‑ on this conviction? The only thing the government ‑‑ Are you going to pledge a guilty plea? I'm sorry? There was a guilty plea to this violation 11352A. It's not clear if it was a plea, if it was a trial, what it was. There was an information and then an abstract of judgment. That is all that the government submitted. All right. Thank you. Thank you, Ms. Dorsey. Good morning. I'm Larry Spong representing the United States. Your Honor, all the evidence that Mr. Ortega presented was a birth certificate which said that his father was a North American citizen. Now, on pages 43 to 59 of the ER, Mr. Ortega has presented what other documents that he found in the A file, one of which is a self‑serving affidavit by the father. It would be hearsay, clearly, as to anything that would be used against the government. It would be hearsay. It would be inadmissible. But more importantly, there's a strategy that happened here, and that strategy needs to be made clear. The A file was available for a long time. They could have requested other documents, if there were any other documents regarding citizenship of the father, of the mother. There was plenty of time to do this. And the judge commented several times, this has come up at the last minute. Why is that? I think it's clear. It's because this is meant to do exactly what 403 does not allow, and that is to confuse the jury. Now, does the government have the burden to show that the defendant is an alien? Absolutely. Made very clear in Smith‑Balthaher at 921. But it also says that the defendant has the right to present a defense of derivative citizenship. It talks about the defense on page 922 and 923. Specifically, quoting, Smith must be allowed to present his defense to the jury. In other words, the government has the burden to prove that the defendant is an alien. What we don't have to do is prove that under the myriad of possibilities, he could not be a citizen, because there are, who knows how many ways one can be a citizen, through naturalization, derivative citizenship, birth of the mother, birth of the father, residency. Did they get to introduce a derivative citizenship defense? They did not. And the reason they did not is because they had no evidence. And when you compare this case to Smith‑Balthaher, it's clear why. Here, we have the defendant's birth certificate. There, they had the mother's own birth certificate. There, they had baptismal records of the mother. Here, we have none, or no comparable. There, they had INS investigative reports concerning and investigating the citizenship of the mother. Here, there are none. There, they had affidavits about the mother's citizenship. Here, all we have is this self‑serving application in the A file of the father. There, there was testimony offered from ‑‑ regarding the mother's citizenship and the fact that she was living in San Diego, and there were witnesses there and available. Here, there's no such proffered testimony, and there were no witnesses available. In fact, the judge made it clear, the father is not here today, page 104 of the excerpts of record. Why wasn't he there? Again, I think it was strategic. This evidence is clearly offered to try to throw the jury off of what's relevant. Did they try to introduce the father's birth certificate? That I'm not clear on, Your Honor. I see that there is a certificate that appears to be of the father's from the United States. Why would that not be admissible? It wouldn't be admissible if that's the only evidence, because what we have is the alienage of the defendant. The government has the burden of proof. We did. Born in Mexico. Okay. The guy says, right, but my father was an American citizen, and I'm entitled to derivative citizenship, and here's a birth certificate to prove my father was born in the United States. Why isn't under Smith, why isn't that? Because it's insufficient. Under Smith, you have to have enough to raise the defense. You still have to have enough to raise the defense. Why is that insufficient? Because there's other requirements for derivative citizenship. There are many other requirements for derivative. It depends on. It may not be total proof, but why isn't that admissible for at least part of the proof? Because what it does is it goes to one small element of whether or not someone is for it. I understand that. But, I mean, if you have to prove six things, and that goes to one of the six, why isn't that admissible? For example, wouldn't you submit, say we let this evidence in. Wouldn't you have a jury instruction that would say to become a derivative citizen, a derivative United States citizen, the defendant must demonstrate the following and enlist all the things. And then you must find that he's done all these things before you can find derivative citizenship. And you can put that instruction and let this half bit of evidence come in and then argue it to the jury. Well, I guess two responses. Number one, I'm not sure when this father's birth certificate came up. There was, and defense counsel was trial counsel, she could answer that. What I know at the time was they were trying to cross-examine only on the son's birth certificate. Now, later on when they did a new motion, they brought other documents. And, again, the Court commented we didn't have this at the time. But I would say even if we have some evidence that the father was a citizen, that really doesn't go to any, that doesn't, first of all, it doesn't go to the alienage of the defendant. It tells us what the alienage of the father is, but there is much more that has to be done. Now, for example, if a bank robber robbed a bank and got away in a red Mustang and, you know what, there was another red Mustang that was sitting there on the street. And defendant wants to bring in, well, that Mustang, there was another Mustang there. We don't know who that belonged to. It could have been that defendant's and somebody misidentified him. And from all that, would it be somewhat, you know, quote, relevant? Yes. But it would be prejudicial because there's nothing, they did no further investigation to find out, well, whose car was it? You know, was it the defendant's car? Did they do this? Did they find out all that? In other words, there's some minimal, maybe probative value, but it's clearly outweighed by the prejudicial effect. Now, had they said we want to establish derivative citizenship, that's one thing. But that's not what they wanted to do. The claim is that this evidence would somehow maybe raise a reasonable doubt to the jury. And it's just that kind of evidence that does cause the sort of prejudice or the confusion on the jury. That's why, in this case, that wouldn't be admissible. In any event, I think it's harmless beyond any reasonable doubt. Let me ask you a question along the lines of what Judge Wardlaw raised before about the categorical and modified categorical approach. Do I understand correctly, all you folks submitted to the district court was an abstract of judgment and a copy of a complaint? It was a copy, I'm sorry, it's a copy of the information that the person pled guilty to. And isn't that insufficient under our cases? No. If you look at the government supplemental excerpts of record on page 350, there is an information there, count one. And that's what he pled guilty to on page 349. Count one, sell or furnish controlled substance. When you look at count one. Doesn't that statute include solicitation? It could include solicitation. How do we know that wasn't all he was doing? Because if you look at the bottom of page 350, it says, it is further alleged that the defendants, Frank O. Ortega and Antonio Romero Carrillo, sold cocaine base within the meaning of the penal code, 1203.073. So he didn't solicit, he sold it. So how do we know what he pled guilty to? Because the abstract of judgment tells us, count one. We have the abstract of judgment says he pled to count one. When you look at count one, it specifically alleges he sold cocaine base. I would submit that those two put together are enough under the modified categorical approach to show that, in fact, this is a drug trafficking crime. He didn't solicit anything. He didn't possess. He sold cocaine base. Those are the exact words in the information. When we look back to the abstract of judgment, that is what he pled guilty to. Do I understand the rule now that this could be also read to mean that he ate and abetted the sale? Because that does not have to be specifically alleged. Under California law, I don't know if that's correct or not. But even if it is, that's still a drug trafficking crime, the sale of cocaine base. Whether you sell it or ate it and abetted it, that's a drug trafficking crime. You just can't get around that part of it. But what about the fact that the judge didn't expressly consider it? Shouldn't we remand to Judge Benitez and have him expressly consider this? Because sitting here, you don't know what the California law is. I can tell you I don't know. Wouldn't it be more appropriate, since he is required to do the categorical and the modified categorical approach at this point, to have him do it? Well, I think it would be a useless exercise. The court pointed out, when he went to sentencing, he made it clear and went to great lengths to say, I'm really familiar with this case. We've had a lot of discussion about a lot of issues. And he went through all the things, all the documents he reviewed, which included documents submitted by the government which had these in it. There was arguments from counsel about the categorical approach. And, no, the judge didn't sit down and say, well, I find that these two things. But it's clear, I think, from the overall record, that that's what happened. So I really don't think that it would be an exercise in a waste of time, because I think the record really is clear that the judge did consider all these things and looked at. He goes through all the objections raised. If you look on pages 401 to 403 of the supplemental excerpts of record, he goes through all the reasons why. He states all the different criminal charges that were against Mr. Ortega, pages 411 to 415. He makes his calculations on page 418. This is not a case where a judge just sort of overlooked this. This is a case where a judge diligently looked through lots and lots of documents. I think it's – it should be clear that he did look at these, that clearly that the allegation was one of sale and that Mr. Ortega did, in fact, sell it. Roberts. Thanks, Mr. Spahn. Thank you. Ms. Dorsey. As to the conviction for 11352, looking at the information, it's clear that that enhancement. I do not believe the information – In what way? Including offers to sell. Solicitation itself is encompassed by what's listed in the information. I do believe a remand is necessary. Under 32c1, the judge did not make factual findings and the Court should remand. More importantly, I would add, all that is required is some evidence. There was some evidence of derivative citizenship. Mr. Ortega was denied the opportunity to present that evidence, and this Court should Thank you. Thank you, Ms. Dorsey. Mr. Spahn, thank you. The case disargued is submitted. Thank you very much.
judges: Lay , Silverman, Wardlaw.